# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JAMES RIVER INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) Case No. CIV-16-950-M ) |
| 5 STAR INTEGRITY ROOFING & EXTERIORS, LLC d/b/a RHEMA ROOFING & EXTERIORS, and INTEGRITY HOME IMPROVEMENTS, LLC d/b/a RHEMA ROOFING & EXTERIORS, | ) ) ) ) ) ) ) ) |
| Defendants. | ) |

## ORDER

Before the Court is plaintiff's Motion for Summary Judgment, filed September 1, 2017. On September 22, 2017, defendants filed their response, and on October 13, 2017, plaintiff filed its reply. Based upon the parties' submissions, the Court makes its determination.

I.  Introduction

Plaintiff is a specialty insurance company. Plaintiff issued a General Liability Policy to defendant 5 Star Integrity Roofing & Exteriors, LLC d/b/a Rhema Roofing & Exteriors ("5 Star") which covered the period February 7, 2013 to February 7, 2014 ("Policy I"). Plaintiff also issued a General Liability Policy to defendant Integrity Home Improvements, LLC d/b/a Rhema Roofing & Exteriors ("Integrity") which covered the period of March 6, 2014 through March 6, 2015 ("Policy II").

On July 30, 2013, an entity identified as Rhema Roofing & Exteriors entered into a "Residential Contractors Contract" with David and Teresa Cook for the construction of a "dwelling

house and appurtenant structures" on property located in Shawnee, Oklahoma. An action was filed in the District Court of Pottawatomie County, Oklahoma, which includes a counterclaim by David and Teresa Cook alleging breach of contract, violation of the Oklahoma Consumer Protection Act, unjust enrichment, slander of title, and negligent injury to property against Integrity ("Cook Counterclaim"). 5 Star and Integrity made a demand on plaintiff to provide a defense to Integrity and indemnify it for all claims and damages alleged in the Cook Counterclaim. On December 10, 2015, plaintiff denied coverage.

On August 19, 2016, plaintiff filed the instant action seeking a declaratory judgment that there is no coverage under both Policy I and Policy II for the matters asserted in the Cook Counterclaim, that plaintiff has no duty or contractual obligation to defend defendants in the Cook Counterclaim, and that plaintiff has no duty or contractual obligation to pay for or indemnify defendants for any judgment which might be entered against them in the Cook Counterclaim. Indemnity has asserted counterclaims against plaintiff for breach of contract, breach of the duty to indemnify/breach of the duty of good faith and fair dealing, and breach of the duty to defend. Plaintiff now moves for summary judgment as to all matters in this litigation.

II. Summary Judgment Standard

"Summary judgment is appropriate if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The moving party is entitled to summary judgment where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. When applying this standard, [the Court] examines the record and reasonable inferences drawn therefrom in the light most favorable to the non-moving party." *19 Solid Waste Dep't Mechs. v. City of Albuquerque*, 156 F.3d 1068, 1071-72 (10th Cir. 1998) (internal citations and quotations omitted).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Furthermore, the non-movant has a burden of doing more than simply showing there is some metaphysical doubt as to the material facts. Rather, the relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Neustrom v. Union Pac. R.R. Co.*, 156 F.3d 1057, 1066 (10th Cir. 1998) (internal citations and quotations omitted).

III. Discussion

Plaintiff asserts that neither Policy I nor Policy II covers the events which occurred in connection with the construction of the home for David and Teresa Cook. Plaintiff further asserts that it had a good faith belief when it denied coverage.

A. Policy I

Plaintiff contends that it intended to provide coverage for 5 Star's activities as a roofer and not as a home builder. Plaintiff further contends that the defense and indemnity sought by 5 Star for the Cook Counterclaim was not for activities as a roofer but was for activities as a home builder and consequently there was no coverage under Policy I for the activities of 5 Star for the matters alleged in the Cook Counterclaim. Additionally, plaintiff contends the contractual liability exclusion precludes any coverage.

"The interpretation of an insurance contract is governed by state law and, sitting in diversity, we look to the law of the forum state." *Houston Gen. Ins. Co. v. Am. Fence Co., Inc.*, 115 F.3d 805, 806 (10th Cir. 1997) (internal citation omitted).

> Insurance policies are contracts interpreted as a matter of law. Parties may contract for risk coverage and will be bound by policy terms. When the policy provisions are unambiguous and clear, the employed language is accorded its ordinary, plain meaning; and the

3

contract is enforced carrying out the parties' intentions. The policy is read as a whole, giving the words and terms their ordinary meaning, enforcing each part thereof. . . . We will not impose coverage where the policy language clearly does not intend that a particular individual or risk should be covered.

*BP Am., Inc. v. State Auto Prop. & Cas. Ins. Co.*, 148 P.3d 832, 835-36 (Okla. 2005) (internal citations omitted). Further, "[i]nsurance contracts are contracts of adhesion, and where the contract is susceptible of two constructions, the construction most favorable to the insured must be adopted." *Wilson v. Travelers Ins. Co.*, 605 P.2d 1327, 1329 (Okla. 1980) (internal citation omitted). Finally, "[t]he general declaration of insurance coverage, as established by the insurance policy and limited by its provisions, normally determines the insurance carrier's liability, and the insured's respective rights under the contract by identifying what risks are covered and excluded by the policy." *Dodson v. St. Paul Ins. Co.*, 812 P.2d 372, 377 (Okla. 1991).

Policy I provides, in pertinent part:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

Policy I at Section I(1)(a). Policy I further provides:

> This insurance applies to "bodily injury" and "property damage" only if:
> (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
> (2) The "bodily injury" or "property damage" occurs during the policy period; and
> (3) Prior to the policy period, no insured listed under Paragraph 1 of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the

4

> policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

Policy I at Section I(1)(b).[1]  Finally, under Policy I's Commercial General Liability Declarations, the business description for 5 Star is "Roofing Contractor," but the following ISO Classification Codes were used:  91580 – Contractors executive supervisors or executive superintendents; 91583 – Contractors – subcontracted work – in connection with building construction, reconstruction, repair or erection – one or two family dwellings; and 91585 – Contractors – subcontracted work – in connection with construction, reconstruction, repair or erection of buildings.  There are specific ISO Classification Codes for roofing contractors, but those codes were not used.

Having carefully reviewed Policy I, as well as the parties' submissions, the Court finds that Policy I would apply to the activities alleged in the Cook Counterclaim, unless an exclusion applies.  Specifically, the Court finds that Policy I does not contain any language specifically excluding coverage for activities as a home builder and does not contain any language specifically limiting coverage to activities as a roofer.  Further, the Court finds that the business description for 5 Star as a roofing contractor, in light of the ISO Classification Codes that were used and specifically listed in the declarations, does not unambiguously limit Policy I's coverage to activities as a roofer.  Based upon the ISO Classification Codes that are listed, it would be reasonable to conclude that Policy I provided coverage for activities as a home builder.  Thus, because Policy I is susceptible of two constructions – coverage limited to roofing activities and

---

[1] "Occurrence" is defined in Policy I as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  Policy I at Section V(13).

5

coverage for activities as a home builder, the construction most favorable to 5 Star – coverage for activities as a home builder – must be adopted.

Plaintiff also contends Policy I's contractual liability exclusion precludes any coverage in this case. Policy I's contractual liability exclusion provides, in pertinent part:

> 2. Exclusions
> This insurance does not apply to:
> \* \* \*
> b. Contractual Liability
> "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:
> (1) That the insured would have in the absence of the contract or agreement; . . . .

Policy I at Section I(2)(b)(1). Since 5 Star and David and Teresa Cook had entered into a contract for the construction of the home, and since the Cook Counterclaim is based upon 5 Star's construction of the home, plaintiff asserts the contractual liability exclusion applies. Having reviewed the parties' submissions, the Court finds that the contractual liability exclusion does not apply in this case. Specifically, the Court finds that the negligence counterclaim asserted by David and Teresa Cook arises apart from the contract entered into between 5 Star and David and Teresa Cook. The Court further finds that any liability 5 Star may have under the negligence counterclaim would arise even in the absence of the contract.

Accordingly, the Court finds that plaintiff is not entitled to summary judgment in relation to Policy I.

B. Policy II

Plaintiff asserts that there was no renewal of Policy I upon its expiration and that Policy II covered a new entity, Integrity. Defendants do not appear to dispute this assertion. Plaintiff further

6

asserts that the "Claims in Progress Exclusion" would apply to preclude coverage under Policy II. The Court has carefully reviewed Policy II, which is attached as Exhibit 4 to Plaintiff's Motion for Summary Judgment and Brief in Support, and was unable to find the "Claims in Progress Exclusion" cited by plaintiff in its motion. Accordingly, the Court finds that plaintiff has not shown that this exclusion applies to Policy II and, thus, coverage would not be precluded based upon this exclusion. Finally, plaintiff asserts that the contractual liability exclusion would apply to preclude coverage under Policy II. For the reasons set forth above in relation to Policy I[2], the Court finds that the contractual liability exclusion would not apply.

Accordingly, the Court finds that plaintiff is not entitled to summary judgment in relation to Policy II.

    C.    Breach of the duty of good faith and fair dealing

Plaintiff contends that Integrity's bad faith counterclaim fails as a matter of law because plaintiff's refusals to defend and indemnify were based on a legitimate dispute over coverage given that a non-covered claim cannot amount to bad faith. As set forth above, the Court has found that these claims are not "non-covered claims." Additionally, having reviewed the parties' submissions, the Court finds that plaintiff has submitted no evidence in support of its contention that it did not breach the duty of good faith and fair dealing, and Integrity has submitted evidence in support of its claim. Accordingly, the Court finds that plaintiff is not entitled to summary judgment in relation to Integrity's breach of the duty of good faith and fair dealing counterclaim.

---

[2] The terms of Policy I and Policy II are the same.

IV. Conclusion

For the reasons set forth above, the Court DENIES plaintiff's Motion for Summary Judgment [docket nos. 15 and 16].

**IT IS SO ORDERED this 9th day of November, 2017.**

VICKI MILES-LaGRANGE
UNITED STATES DISTRICT JUDGE